## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

**WILLIE B. TURNER,**                    **CIVIL ACTION NO.**

     **Plaintiff,**                       **5:06-CV-00293-CAR-CWH**

**Vs.**

**HALE EDWARD BURNSIDE;**
**CALVIN RAMSEY;**
**JOHN TYE;**
**OTIS WRIGHT;**
**ROGER HINKLE;**
**TYDUS MEADOWS;**
**JOHN DOE NO. 1;**
**JOHN DOE NO. 2;**
**JANE DOE NO. 1;**
**JANE DOE NO. 2,**

     **Defendants.**

## PLAINTIFF'S RESPONSE TO
## DEFENDANTS' RENEWED MOTION TO DISMISS

Plaintiff, Willie B. Turner ("Turner"), through his undersigned counsel, makes this Response to Defendants' Renewed Motion to Dismiss ("Defendants' Motion"), and shows the Court as follows:

## ARGUMENT AND CITATION OF AUTHORITY

**PLAINTIFF EXHAUSTED ADMINISTRATIVE REMEDIES
TO THE EXTENT AVAILABLE BECAUSE HIS GRIEVANCE WAS
DELIBERATELY TORN UP BY THE WARDEN AS A COVER UP AND
THE WARDEN THREATENED PLAINTIFF WITH RETALIATION IF HE
PURSUED ANOTHER GRIEVANCE OR LAWSUIT**

Plaintiff Turner has submitted sworn affidavits that he did file a grievance about being electrocuted that was caused by the deliberate indifference of the Defendants. His grievance was accepted by his counselor and then deliberately torn up in front of him by Defendant Warden Meadows who also threaten the Plaintiff with never seeing his family again if he filed a grievance or lawsuit abut being electrocuted if he ever filed another grievance that, "he would put his ass in the van with inmate Johnson and transfer him so far south that he would never be able to see his family again till he got out of the Georgia prison system"  and that "he had better not hear of another grievance or lawsuit pertaining to him getting shocked." (Established in sworn affidavits of Plaintiff, Docket Nr. 22-Exhibits A & B, Docket Nr. 4, Docket Nr. 25).

The Plaintiff did exhaust grievances by filing a grievance that was intentionally torn up by the Warden which should have bypassed the three step grievance procedure pursuant to an exception to the grievance procedure to go directly to the Commissioner's office to be investigated by Internal Affairs. SOP

IIB05-0001, Attachment 9, 7/01/04, III. EXCEPTIONS TO INFORMAL GRIEVANCE REQUIREMENT (A) (1) & (2).

The Eleventh Circuit in reversing and remanding this case in *Turner v. Burnside, et al.*, 541 F. 3d 1077 (11th Cir. 2008) adopted the objective standard articulated in *Hemphill v. New York*, 380 F.3d 680, 688 (2nd Cir. 2004) which provides guidance as to when the grievance procedure becomes unavailable because of threats and intimidation. The Second Circuit in *Hemphill* has articulated an objective standard that an inmate with "ordinary firmness" should be the test for deciding whether a grievance procedure is "available." There cannot be any doubt that the deliberate tearing up of the Plaintiff's grievance by the Warden and being threaten by the Warden that he would never see his family again while in prison would deter an inmate of "ordinary firmness" from filing any other grievances.

The Order of the Court adopting the Report and Recommendation in the Defendants' initial Motion to Dismiss was based on the affidavit of Margie Spear that there is no record of a grievance having been filed by the Plaintiff. The Affidavits of filed by the Defendants present the very same argument that there is no record of the Plaintiff's grievance. Of course there is no record of the Plaintiff's grievance because it was intentionally torn up by Warden Meadows to cover up the electrocution of the Plaintiff and Warden Meadows threatened the Plaintiff with never seeing his family again while in prison. The grievance was deliberately

thwarted and prevented from being processed through the grievance procedure. (Plaintiff's Response to Motions to Dismiss, Docket Nr. 22-Exhibits A & B, and Affidavit of Plaintiff, Docket Nr. 4, Docket Nr. 25).

The affidavit of the Kay Newsome who was Plaintiff's counselor skillfully dodges denying that she received the grievance from Plaintiff stating that, "I have no recollection of Inmate Turner ever asking me for a grievance form and I have no recollection of Inmate Turner ever submitting any grievance form to me relating to an electric shock or related medical treatment." She then goes on to state that she would have followed the statewide Grievance Procedure. (Newsome Affidavit, Para. 25). This lack of recollection is not a denial that the Plaintiff gave her the grievance that was ultimately torn up by Defendant Warden Meadows and is not probative to deny the affirmative statement of the Plaintiff that he gave the grievance to counselor Newsome and that the next time he saw it was in the hands of Warden Meadows where it was torn up. Not surprisingly, Warden Meadows denies tearing up the grievance and threatening the Plaintiff. (Meadows affidavit, Para. 16-20). A motion to dismiss should be decided on the Plaintiff's factual presentation when there is a material conflict.

Abuse of prisoners goes on in the shadows covered up behind prison walls when it takes five entitles to participate as well as cover up the abuse. It takes the corrections officers to engage or be deliberately indifferent to the abuse of inmates

often encouraged by the supervision and officials at the prison. It takes the supervision to condone the abuse and who often initiate and participate in the abuse. It takes medical personnel to intentionally cover up the injuries that result from the injuries. It takes the Warden and Deputy Warden to condone and intentionally cover up the abuse. And it takes Internal Affairs to intentionally whitewash the investigations of the abuse. The denials in the Defendants' Motion is a continuation of the cover up by the Attorney General having no interest in stopping the abuse of its citizens, preferring instead to avoid the merits and throw up strained procedural defenses.

The Eleventh Circuit's opinion disposed of the contention in the Report and Recommendation that the Plaintiff should have filed an additional grievance, sought an appeal of the Warden tearing up his grievance, or filed for an out of time grievance. The Report and Recommendation did not consider that the Plaintiff was threatened with not seeing his family again while in prison if he pursued a grievance nor did the Report and Recommendation consider that the filing of the informal grievance was all that was required under the Standard Operating Procedure so that no further grievances were required beyond the informal grievance concerning staff abuse which should have gone directly to Internal Affairs for investigation. The facts are established in sworn Affidavits of the

Plaintiff attached to Plaintiff's Response as "Exhibits A & B" (Docket Nr. 22-Exhibits A & B) and the Affidavit of the Plaintiff. (Docket Nr. 4, Docket Nr. 25).

On August 24, 2004, Plaintiff received a near-fatal electrocution when he was ordered to move a 220 volt electric oven by Defendant Wright and under the supervision of Defendant Hinkle who did not have the electric oven de-energized. Plaintiff was ordered to move the electric oven with the 220 volt electric power still connected to the oven. Defendants Hinkle and Defendant Wright were deliberately indifferent to the substantial risk of injury and risk of death to the Plaintiff. The electric oven had previously shocked other inmates and Defendant Hinkle, Defendant Wright, and Defendant Does were deliberately indifferent to the substantial risk of injury and risk of death to the Plaintiff and similarly situated inmates working in the kitchen around the defective 20 volt electric oven without repairing the oven. Defendant Tye who is supervisor of maintenance at Men's State Prison was deliberately indifferent by not repairing the defective 220 volt electric oven.

While the Plaintiff was moving the defective electric oven which was not de-energized by the Defendants Wright and Hinkle, the Plaintiff received a severe and near-fatal shock from the 220 volts of electricity still connected to the electric oven. Plaintiff was knocked to the floor by the electric shock and could not get his hand loose from the 220 volts of electricity. Defendant Wright who was the

supervisor standing close to the Plaintiff did not come to the aid of the Plaintiff, just laughed, and said, "I knew I was going to get you, I just didn't know when." The Plaintiff desperately told Defendant Wright to hit the beaker and cut the power which had Plaintiff locked to the 220 volt electricity unable to free himself. Finally, Plaintiff was able to use his feet to kick the oven away in order to save his life, but not until he suffered severe electric shock injury.

Plaintiff was refused medical treatment by Defendant Burnside who refused to see Plaintiff, joking that if Plaintiff wasn't dead from the severe 220 volt electric shock of substantial duration that there was no need to see him. The next day Dr. Minerve examined the Plaintiff and said that Dr. Burnside should have sent him to an outside hospital. Defendant Ramsey, the Health Services Administrator, refused to send Plaintiff to an outside hospital who said if the Plaintiff was still living, he did not need to go to a hospital and that he could spend the money on something else. Plaintiff finally was sent to Augusta State Medical Prison where he was seen by a neurological specialist who diagnosed that the Plaintiff had received burns to his muscular and nervous systems which had caused infection in his legs. Plaintiff was in severe pain and suffered permanent injury and disability.

Plaintiff wrote a grievance and gave it to his counselor, Mrs. Newsome, on September 7, 2005. She accepted his grievance and told him that she would make a copy for him, which he never received. The next time that the Plaintiff saw the

grievance was in the hands of Warden Meadows who tore up the grievance in his presence on September 9, 2004.

Warden Meadows had called the Plaintiff to security and greeted him saying, "Oh – you're the one that got shocked!" Warden Meadows had the grievance in his hand that had earlier been given to his counselor, Mrs. Newsome. Warden Meadows then stated to the Plaintiff that, "if he did not like the way they did things around here he would put his ass in the van with inmate Johnson and transfer him so far south that he would never be able to see his family again till he got out of the Georgia prison system." Next, Warden Meadows tore up the grievance and told the Plaintiff that, "he had better not hear of another grievance or lawsuit pertaining to him getting shocked." He further told the Plaintiff that his name was in a lawsuit that inmate Johnson had filed which the Plaintiff was never told about.

Plaintiff has exhausted administrative remedies to the extent such remedies were available and has satisfied the prerequisites to filing this action concerning prison conditions required under the Prison Litigation Reform Act, 42 U.S.C. § 1997e. The grievance procedure was not "available" to the Plaintiff. He submitted a grievance, which was torn up by Warden Meadows to cover up the electrocution of the Plaintiff. Warden Meadows threatened the Plaintiff with never seeing his family again while in prison. The grievance was intentionally not processed

through the required grievance procedure. Therefore, there practically was no grievance procedure "available" to the Plaintiff.

The policy of the Prison Litigation Reform Act only requires that the Plaintiff pursue and exhaust "available" grievance remedies. *Brown v. Sikes,* 212 F. 3d 1205 (11th Cir. 1205) instructs that a prisoner need only exhaust "available", [42 U.S.C. § 1997e (b)] administrative remedies under the PLRA. *Brown v. Sikes*, at 1208, pointed out that none of the purposes of the PLRA Act is furthered by "shutting the courthouse door to a prisoner who, at the time he filed his grievance, did not know and could not readily ascertain the identity of the individuals responsible for the alleged injury or deprivation."

The Eleventh Circuit in the opinion of this case adopted the *Hemphill* standard instructing:

> We conclude that a prison official's serious threats of substantial retaliation against an inmate for lodging in good faith a grievance make the administrative remedy "unavailable," and thus lift the exhaustion requirement as to the affected parts of the process if both of these conditions are met: (1) the threat actually did deter the plaintiff inmate from lodging a grievance or pursuing a particular part of the process; and (2) the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust. *See Hemphill,* 380 F.3d at 688 ("The test for deciding whether the ordinary **[**18] grievance procedures were available must be an objective one: that is, would 'a similarly situated individual of ordinary firmness' have deemed them available." (citation omitted)); *cf. Smith v. Mosley,* 532 F.3d 1270, 1277 (11th Cir. 2008)

The recent United States Supreme Court case of *Woodford v. Ngo*, 548 U.S. ___, 126 S.Ct. 2378 (2006), instructed that an inmate must exhaust available grievances as provided in the PLRA, but this decision does not change the law that an inmate does not have to exhaust remedies when the grievance procedure is practically not available. The fact is that there was no practical grievance procedure available for the Plaintiff once the Warden tore up his grievance and threatened him. At that point the Plaintiff had attempted the best that he could to exhaust grievances. Once the Plaintiff was threatened and thwarted from pursuing a grievance by the Warden, it is unreasonable to require that he continue to insist repeatedly to file an out of time grievance.

The Seventh Circuit in *Kaba v. Stepp*, 458 F.3d 678 (7th Cir. 2006) instructed that a grievance may be unavailable where grievance forms were withheld from an inmate as well as when the inmate was intimidated and threatened from filing a grievance. The Seventh Circuit differentiated *Woodford v. Ngo, supra,* holding that a grievance could not become unavailable simply because of the inmate's failure to pursue a grievance from a situation where the grievance procedure cannot denied access to the courts because prison employees refuse to furnish grievance form or refuse to respond to a grievance. The Seventh Circuit emphasized, "Nonetheless, the exhaustion requirement is not jurisdictional.

*Woodford*, 126 S. Ct. at 2392." If administrative remedies are not practically "available" to an inmate, then the inmate cannot be required to exhaust.

*Hemphill v. New York*, supra, provides guidance as to when the grievance procedure becomes unavailable because of threats and intimidation. The Second Circuit has articulated an objective standard that an inmate with "ordinary firmness" should be the test for deciding whether a grievance procedure is "available." There cannot be any doubt that the tearing up the Plaintiff's grievance and threatening him with never seeing his family again in prison would deter an inmate of "ordinary firmness" from filing an internal grievance. *Hemphill,* instructs in excusing filing an internal grievance in the face of threats or other intimidation:

> The test for deciding whether the ordinary grievance procedures were available must be an objective one: that is, would 'a similarly situated individual of ordinary firmness" have deemed them available. *Cf. Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (articulating the "individual of ordinary firmness" standard in the context of a prisoner retaliation claim). Moreover it should be pointed out that threats or other intimidation by prison officials may well deter a prisoner of "ordinary firmness" from filing an internal grievance, but not from appealing directly to individuals in positions of greater authority within the prison system, or to external structures of authority such as state or federal courts. This may be so, if for no other reason, because seeking a criminal investigation or filing a civil rights complaint may enable an inmate to draw outside attention to his complaints, thereby neutralizing threatened retaliatory conduct from prison employees. *Id*.at 688.

The sworn testimony of the Plaintiff established that he did write a grievance and gave it to his counselor, Mrs. Newsome, on September 7, 2005. She accepted

his grievance and told him that she would make a copy for him which he never received. The defiant act of Warden Meadows deliberately tearing up the grievance and not sending the grievance to Internal Affairs as required should not be permitted to thwart Plaintiff's Access to the Courts seeking redress against the culpable prison officials and staff. The United States Constitution does not stop at the prison gate protecting against such a constitutional outrage that should shock the conscious of any sense of decency.

The Defendant Warden cannot have de facto veto power over the Plaintiff's constitutional Access to the Courts by thwarting the grievance procedure and then arguing that because he thwarted the grievance procedure that the Plaintiff then cannot maintain a cause of action under the civil rights laws for violation of his constitutional protection under the Eighth Amendment. This illogical contention turns the law upside down by denying Access to the Courts to a severely injured prisoner and protecting the clearly culpable prison officials and staff who caused the physical abuse of the Plaintiff and who have participated in a deliberate cover up to deny Plaintiff Access to the Courts to seek redress.

## PLAINTIFF HAS PROPERLY PLEAD CAUSE OF ACTION AGAINST DEFENDANTS HINKLE, TIGHE AND MEADOWS

The Defendants' Motion seeks to dismiss claims against Defendants kitchen supervisor Hinkle, maintenance supervisor Tighe (corrected name of Defendant

Tye), and Warden Meadows on the grounds that no acts of wrongdoing are alleged against them.

The allegations in the Complaint comport to notice pleading requirements pursuant to Federal Rules of Civil Procedure, Rule 12:

The Restated Complaint alleges that Defendants Wright and Hinkle were deliberately indifferent to the substantial risk of injury to Plaintiff by not de-energizing the 220 volt power to the oven and not repairing the defective oven that Plaintiff was required to move without safety precautions who stood by while Plaintiff was being electrocuted. (Complaint Para. 7, 9 and 15) and seeks damages against Defendant Wright in his individual capacity for violation of Plaintiff's civil rights protected by the Eighth Amendment of the United States Constitution. (Complaint 20-24, Prayer for Relief (1) and (3).

The Restated Complaint alleges that Defendant Tye was deliberately indifferent to the substantial risk of injury to Plaintiff and risk of death by not repairing the defective 220 volt oven around which Plaintiff and similarly situated inmates were required to work that proximately caused the electrocution of Plaintiff. (Complaint Para. 6 and 17) and seeks damages against Defendant Tye in his individual capacity for violation of Plaintiff's civil rights protected by the Eighth Amendment of the United States Constitution. (Complaint 20-24, Prayer for Relief (1) and (3).

The Restated Complaint states a cause of action against Defendant Meadows for violation of the First Amendment of the United States Constitution by threatened Plaintiff that if he filed grievances or a lawsuit that he would send Plaintiff so far down south that he would never seek his family again. (Complaint para. 14).

### THE PROCEDURE OF THE DISTRICT COURT FOR RESOLUTION OF THE EXHAUSTION ISSUE ALLOWS IMPERMISSABLE JUDICIAL FACT FINDING AND VIOLATES THE STANDARDS FOR TESTING MOTIONS TO DISMISS

The Defendants' Motion urges the District Court to exercise impermissible judicial fact-finding. As the undisputed sworn facts of this matter demonstrate, the Plaintiff has a meritorious cause of action.  To burden his civil suit with fact-finding, concerning procedural rules, not expressly provided in the PLRA, is to treat him differently as a litigant before the federal courts because of his status. This is not constitutionally permissible.

The Plaintiff presented uncontraverted evidence with properly pled facts and established by the sworn testimony of the Plaintiff that must be accepted as fact by the District Court in opposition to motions to dismiss or even motions for summary judgment. The Plaintiff has established that the grievance procedure was not practically "available" to him after this grievance was intentionally torn up by the warden who also threatened him not to file another grievance or lawsuit. The Plaintiff has a constitutional and legal right to a trial by jury, when there has been a

proper demand in the pleadings. Neither Rule 12 nor Rule 56 allow judicial fact-finding. Yet, this is exactly what the Court did.  The practical "availability" of a grievance procedure to this Plaintiff is a matter of fact that should have been left to the jury.

In the novel procedure urged by the Defendants' Motion to Dismiss, the Court must accept the facts as alleged in the complaint if supported by sworn testimony.  Even under the higher standards applicable to the testing of the pleadings upon the filing of a summary judgment motion, the plaintiff's testimony is to be credited.  Under those higher standards, the facts are to be weighed under the principles articulated in the Supreme Court's trilogy of 1986: *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242 (1986); *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 175 U.S. 574 (1986); and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Proper application of those principles demonstrates that the Plaintiff would be entitled to present his case on the merits to the trier of fact, even under summary judgment tests.

For example, *Anderson v. Liberty Lobby* requires the factual evidence and inferences to be viewed most favorably to the plaintiff:  "If the defendant in a run-of-the-mill civil case moves for summary judgment … based on the lack of proof of a material fact, the judge must ask himself *not whether he thinks the evidence unmistakably favors one side or the other* but whether a fair-minded jury could

return a verdict for the plaintiff on the evidence presented." *Id.* at 252. [Emphasis supplied.] In answering this question, the federal trial judge must view the inferences to be drawn from the underlying facts in the light most favorable to the plaintiff (*e.g., United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962); *Vinyard v. Wilson, supra* at 1346 n. 7. "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby*, *supra* at 255, citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-159 (1970).

Plaintiff's own sworn testimony will prevent dismissal, or even the entry of summary judgment, so long as the evidentiary tests of the Supreme Court and the Eleventh Circuit are met. In the words of *Matsushita,* more is required than "metaphysical doubt as to the material facts." 475 U.S. at 586. But, if the record, taken as a whole, could lead a rational fact trier to find for the nonmovant, there is a "genuine issue for trial." *Id.* at 587.

The material facts presented in sworn testimony establish that the Plaintiff did file grievance which was defiantly torn up by the Warden right in front of the Plaintiff while threatening the Plaintiff not to file another grievance or law suit which was tantamount denial of Access to the Courts as well as an affront to the United States Constitution.

*Bryant v. Rich*, 530 F. 3d 1368 (11th Cir. 2008) and related cases from the Eleventh Circuit originating in the Southern District of Georgia[1] presented an issue, believed to be of first impression to be decided by the Eleventh Circuit.  The Eleventh Circuit's decision adopted the "abatement" approach of the Ninth Circuit in *Wyatt v. Terhune,* 315 F.3d 1108 (9th Cir. 2003), *cert. denied*.[2] Judge Wilson dissenting argued that the majority decision could not be "reconciled with the recent United States Supreme Court decision in *Jones v. Bock,* 549 U.S. 199 (2007)" and that the issue of exhaustion of administrative remedies should be treated just like other affirmative defenses as questions for the jury. (*Bryant*, supra at 1379).

Specifically, *Wyatt v. Terhune*, found that exhaustion is an affirmative defense, because Congress, in enacting the PLRA, did not expressly impose a heightened pleading requirement. 315 F.3d at 1117-19.   This issue was subsequently considered by the Supreme Court, in *Jones v. Bock,* 549 U.S. 199 (2007).  The Court agreed with the majority of the Circuits, including the Ninth,

---

[1] *Jeffery L. Mason v. Officer Bridger, et al*, (11 Cir. Appeal No. 07-14206, 2008); *Larry John Stephens v. Tony Howerton, et al*, (11th Cir. Appeal No. 07-13243, 2008); *Larry Wayne Poole v. Glen Rich, et al*, (11th Cir. Appeal No. 07-1380, 2008).

[2] There has been consideration of this issue in Circuits other than the Ninth. The Seventh Circuit has taken a similar approach to judicial determination of facts in deciding exhaustion issues in *Pavey v. Conley*, 528 F. 3d 494 (7th Cir. 2008).  In *Rasid Qawi Al-Amin v. Johnson*, 2005 U.S. Dist. LEXIS 44585 (E.D. Va. 2005), the Court found that the "Ninth Circuit's approach most closely conforms to the case law in" the Fourth Circuit.    See *Lawrence v. Virginia Department of Corrections*, 308 F. Supp. 2d 709 (E.D. Va. 2004);   *Johnson v. Garraghty*, 57 F. Supp. 2d 321 (E.D. Va. 1999).

that the PLRA imposes no special pleading requirements upon prisoner-plaintiffs and that exhaustion under the PLRA is, indeed, an affirmative defense.[3]   And affirmative defenses are to be decided by the jury, not by the Judge making credibility determinations.

The Ninth Circuit's view adopted by the panel majority in this case is that "[i]n deciding a motion to dismiss for a failure to exhaust non-judicial remedies, a court may look beyond the pleadings and decide disputed issues of fact."  *Wyatt v. Terhune, supra* at 119-1120.   However, neither the Ninth Circuit, the Eleventh Circuit, the Seventh Circuit nor the District Courts have offered any evidence of Congressional intent to establish this procedure in a context that is otherwise governed by such assessments of legislative intent.  *E.g., Porter v. Nussle*, 534 U.S. 516 (2002).

The unanimous decision in *Jones v. Bock, supra*, strongly indicates that the procedure used by the Southern District, here and in other PLRA cases, should not be sanctioned.   In finding that special pleading rules under the PLRA were inappropriate, the Chief Justice, for a unanimous Court, first held that exhaustion was, in fact, to be treated as an affirmative defense of the Respondent.   The PLRA's legislative history dealt extensively with exhaustion, but failed to say whether it must be plead by the Plaintiffs or raised affirmatively by the

---

[3] *Wyatt v. Terhune* was cited with approval by the Supreme Court in *Jones v. Block* (at footnote 2) but not for the proposition raised by the case *sub judice*.

Defendants.  "This is strong evidence that the usual practice should be followed, and the usual practice under the Federal Rules is to regard exhaustion as an affirmative defense."  127 S. Ct. at 919.

The Supreme Court's unanimous decision in *Jones* found no authority in the PLRA for the treatment of "prisoner complaints … outside of [the] typical framework."  Such "departures from the normal litigation framework of complaint and response" could not be authorized.  "We think that the PLRA's screening requirement does not – explicitly or implicitly – *justify deviating from the usual procedural practice beyond the departures specified by the PLRA itself*."  [Emphasis supplied.]  *Id.*

*Jones* is an unequivocal mandate for even-handedness in the treatment of prisoner and non-prisoner civil litigation, beyond that expressly authorized by Congress.  It is difficult to square this mandate with the procedure crafted by the Ninth Circuit and adopted by the Southern District of Georgia as well as in this case by the Middle District of Georgia.

Indeed, the United States District Court for the Southern District of New York recently addressed the position taken by the Southern District of Georgia and reached a different conclusion.  In *Lunney v. Brureton*, 2007 U.S. Dist. LEXIS 38660 (S.D. NY, 2007), that Court addressed the position, advanced by the official Respondents, that PLRA "exhaustion" issues should be determined at a

preliminary hearing by the court rather than by a jury.   While acknowledging *Wyatt v. Terhune* and the practice of the Southern District of Georgia in cases such as *Priester v. Rich*, 457 F. Supp. 2d 1369, 1377 (S.D. Ga. 2006), the Southern District of New York suggests that *Jones v. Bock* requires a different result.   "As the Supreme Court has recently affirmed, however, exhaustion is an 'affirmative defense,' much like a statute of limitations defense.   *See Jones v. Bock,* supra. Where there are disputed factual questions regarding an affirmative defense such as a statute of limitations defense, the Second Circuit has stated that 'issues of fact as to the application of that defense must be submitted to a jury.'   *Katz v. Goodyear Tire & Rubber Co.*, 737 F.2d 238, 243 n. 21 (2d Cir. 1984).   ***Thus, it is not clear that factual disputes regarding the exhaustion defense should ultimately be decided by the Court***." [Emphasis supplied.]   *Lunney, supra* at n. 4.

The Fourth Circuit in *Anderson v. XYZ Correctional Corporation,* 407 F.3d 674 (4th Cir. 2005) summarized the decisions of the Courts of Appeals considering the related issue of whether the PLRA's exhaustion requirement is jurisdictional and no court has determined that the PLRA exhaustion requirement is jurisdiction in every other circuit that has considered the issue:

> Every court to have considered the question has concluded that § 1997e(a)'s exhaustion requirement is not a jurisdictional requirement. *Steel v. Federal Bureau of Prisons,* 355 F. 3d 1204, 1208 (10th Cir. 2003)] ; *Richardson v. Good*, 347 F. 3d 431, 434 (2d Cir. 2003) (per curiam); *Casanova v. DuBois,* 289 F. 3d 142, 147 (1st Cir. 2002); *Ali v. District of  Columbia*, … 278 F. 3d 1, 5-6 (D.C. Cir.

2002); *Wright v. Hollingsworth*, 260 F. 3d 357, 358 n. 2 (5th Cir. 2001); *Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000); *Nyhuis v. Reno*, 204 F. 3d 65, 69 n.4 (3rd Cir. 2000); *Massey v. Helman*, 196 F.3d 727, 732 (7th Cir. 1999) ]; *Wyatt v. Leonard*, 193 F. 3d 876, 879 (6th Cir. 1999); *Rumbles v. Hill,* 182 F. 3d 1064, 1068 (9th Cir. 1999) *overruled on other grounds by Booth v. Churner,* 523 U.S. 731, 740-41 (2001).* We agree.

While Congress could have provided that a district court lacks subject-matter jurisdiction in prison-condition cases unless the inmate has exhausted his administrative remedies, the PLRA does not do that.

The fact finding of the District Court runs squarely into the Seventh Amendment guarantee of Right to Jury Trial afforded all litigants in our federal courts. The Seventh Amendment requires that facts must be determined by jury trial and not by judges. *Dairy Queen, Inc. v. Wood,* 369 U.S. 469 (1962); *Beacon Theaters v. Westover,* 359 U.S. 500 (1959). The courts should defer to interpretations that do not raise fundamental constitutional issues when there is an interpretation that will avoid the constitutional question. There is certainly no reason to interpret the Prison Litigation Reform Act any differently from other affirmative defenses particularly since there is no statutory authority in the Prison Litigation Reform Act or anywhere else for such a radical departure.

## THE PLAINTIFF AND SIMILARLY SITUATED INMATES IN GEORGIA PRISONS ARE BEING DENIED CONSTITUTIONAL ACCESS TO THE COURTS AND EQUAL PROTECTION

The Defendants' Motion would "close the courthouse door" to the Plaintiff. Plaintiff was not required to exhaust administrative grievances to the extent that

the grievance procedure was not practically available. This would  produce a result as pointed out by Justice Stevens in his dissent in *Woodford v. Ngo*, *supra*, that the PLRA may be vulnerable to constitutional challenges as the denial of "the right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances." *Id.* at 2404. The Constitution guarantees that prisoners, like all citizens, have a reasonably adequate opportunity to raise constitutional claims before impartial judges, *see, e.g.*, *Lewis* v. *Casey,* 518 U.S. 343, 351, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996). Moreover, because access to the courts is a fundamental right, government-drawn classifications that impose substantial burdens on the capacity of a group of citizens to exercise that right require searching judicial examination under the Equal Protection Clause.

*Woodford v. Ngo*, *supra,* reaffirmed that an inmate must exhaust available grievances as provided in the PLRA, but *Woodford* did not change the law that an inmate does not have to exhaust grievances, when the grievance procedure is practically not available or when there has been substantial compliance with the grievance procedure.

The grievance procedure at Georgia prisons is being turned into a device to circumvent meritorious cases filed by prisoners against officers and officials actively thwarting, preventing, and even threatening inmates from filing grievances concerning staff abuse that has caused serious injuries as well as actively

participating in cover ups as in the instant case. Such arguments by the Attorney General and Special Assistant Attorney Generals is an abuse of procedure and turns the law upside down to protect clearly culpable officers and officials who actively engaged in, condoned, or were deliberately indifferent as well as covered staff abuse and serious injuries to prisoners.

The argument in Defendants' Motion is an abuse of procedure and turns the law upside down to protect clearly culpable officers and officials who actively engaged in, condoned, or were deliberately indifferent to the self evident very substantial risk of injury and even death to the Plaintiff and denies access to the courts and redress for incarcerated citizens who have unquestionably been subjected to substantial injury in violation of constitutional and civil rights. It is respectfully submitted that the rule of law must prevail and practical access as well as redress in the courts is imperative in our constitutional government.

The PLRA was not intended to be a "Catch 22," to effectively give veto power of the prison official by denying Plaintiff access to the grievance process and thus denying Plaintiff Access to Courts. This cannot be the law in American where citizens are constitutionally guaranteed Access to the Courts for redress.

"The best you can do is the best you can do" was previously the common sense standard for PLRA exhaustion analyses provided by the Eleventh Circuit in *Brown v. Sikes,* 212 F.3d 1205 (11th Cir. 2000). However, now the Report and

Recommendation in the instant case would have the courts retreat from the well reasoned "best you can do" standard to a complete abrogation of constitutional Access to Courts to prison officials who control the access and processing of grievances by simply tearing up a grievance.

*Bounds v. Smith*, 430 U.S. 817, 822 (1977) affirmed prisoners' constitutional right of Access to Courts, "It is now established beyond doubt that prisoners have a constitutional right of access to the courts." *Bounds*, 430 U.S. at 824, 825, 828, describes the constitutional Right of Access without limiting the right to prisoners with meritorious claims and reaffirms the Right of Access even before *Bounds* as covering, "a grievance that the inmate wished to present . . ." Justice Stevens dissenting in *Lewis v. Casey,* supra at 405, which was decided under Equal Protection and Due Process Clauses emphasized, "the 'well-established' right of access to the courts is one of these aspects of liberty that States must affirmatively protect."

*Rasul v. Bush,* 542 U.S. 466 (2004) even extended Right of Access to courts to foreign national detainees not only for habeas corpus, but also for tort actions. Surely the Right of Access to Courts must be extended to our incarcerated citizens to maintain actions for terrible staff abuse without giving the culpable officials and officers veto power by tearing up grievances and threatening abused inmates not to file grievances in order to block access to the Courts.

The grievance procedure in Georgia prisons is being turned into a barrier to circumvent meritorious cases being filed by prisoners who have filed grievances prior to filing suit but the grievances are is never sufficient for prison officials. Plaintiff and similarly situated inmates in Georgia prisons are being denied redress in the courts in violation of the United States Constitutional guarantying every citizen redress in Article III courts.

The PLRA singles out incarcerated citizens to add often insurmountable burdens on their ability to seek redress in the courts as illustrated in the instant case. When a class of citizens is denied fundamental constitutional rights the reasons for the constitutional denial should be subject to strict scrutiny and, in no case, should denial of rights of a class of citizens by state action be permitted without a rational basis. *Johnson v. California*, 543 U.S. 499, 505 (2005) held that prisoners were entitled to equal protection not to be segregated by race and excuses which is subject to strict scrutiny. *Gratz v. Bollinger*, 539 U.S. 244, 270 (2003) continued the well established constitutional protection that, "All racial classifications reviewable under the equal protection clause of the Federal Constitution's Fourteenth Amendment had to be strictly scrutinized. This standard of review was not dependent on the race of those burdened or benefited by a particular classification."

*Halbert v. Michigan,* 545 U.S. 605 (2005) instructed that the Due Process and Equal Protection Clauses require the appointment of counsel for defendants, convicted on their pleas, who seek access to first-tier review in the Michigan Court of Appeals: "a State may not 'bolt the door to equal justice' to indigent defendants. *Griffin* v. *Illinois,* 351 U.S. 12, 24 (1956) (Frankfurter, J., concurring in judgment)… Our decisions in point reflect "both equal protection and due process concerns." *M.L.B. v. S.L.J.*, 519 U.S. 102, 120 (1996).   "The equal protection concern relates to the legitimacy of fencing out would-be appellants based solely on their inability to pay core costs," while "[t]he due process concern homes in on the essential fairness of the state-ordered proceedings." *Ibid.;* see also *Evitts* v. *Lucey,* 469 U.S. 387, 405 (1985). Under this reasoning a whole class of incarcerated citizens cannot be practically denied Access to Courts or even substantially burdened with having to risk being beaten as a precondition to Access to Courts.

It is submitted that the denial of Access to Court of a class of citizens violates Equal Protection when judged under a strict scrutiny standard. Even under a rational basis standard there is an unjustifiable denial of Equal Protection because of the virtually complete denial of Access to Courts by the practical application of the PLRA.

## **CONCLUSION**

The policy of the PLRA requires only that an inmate exhaust "available" grievance remedies. The PLRA is not furthered by "shutting the courthouse door to a prisoner" when there is a valid reason preventing filing a grievance and prison officials should not be given de facto veto power over constitutionally guaranteed Access to the Courts by tearing up a grievance and threatening the Plaintiff with retaliation if he every attempted to file a grievance again, then taking the position that the Plaintiff cannot pursue his meritorious cause of action in court because he has not exhausted grievances. In fact by filing a grievance alleging abuse by staff the Plaintiff did fully exhaust the grievance procedure because his grievance should have been transmitted directly to Internal Affairs for investigation, thereby bypassing all other steps in the grievance procedure.

It is submitted that the United States Constitution provides practical Access to the Courts to seek redress for violation of civil and constitutionally protected rights. Equal Protection is violated when an entire segment of citizens is disenfranchised from practical Access to Courts. This is America where prison officials should not be given veto power over Access to the Courts and the Attorney General should not be permitted to utilize strained procedural bars to prevent or inhibit redress in meritorious civil and constitutional rights cases for incarcerated citizens.

This 9th day of February, 2009.

Respectfully submitted


*s/McNeill Stokes*
McNeill Stokes
Georgia Bar No. 683600
Attorney for Plaintiff

1040 Peachtree Battle Ave.
Atlanta, Georgia 30327
Tel: 404-352-2144
Fax 404-367-0353

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney certifies that on the date listed below that the foregoing Plaintiff's Response to Defendants' Second Motion to Dismiss was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record including: Michelle J. Hirsch. Kevin T. Brown, Mary Beth Hand.

This 9th day of February, 2009.

<u>s/McNeill Stokes</u>
McNeill Stokes
Attorney for Plaintiff

1040 Peachtree Battle Ave.
Atlanta, Georgia 30327
Tel: 404-352-2144
Fax 404-367-0353